BIG HORN COAL COMPANY, a corporation,
*Plaintiff and Respondent,*

vs.

SHERIDAN-WYOMING COAL COMPANY, INC.,
a corporation,
*Defendant and Appellant.*

(No. 2469; November 21, 1950; 224 Pac. (2d) 172)

For plaintiff and respondent the cause was submitted on the brief of Mr. A. W. Lonabaugh of Sheridan, Wyoming and Mr. W. C. Fraser of Omaha, Nebraska.

For defendant and appellant the cause was submitted on the brief of Mr. R. E. McNally of Sheridan, Wyoming.

## OPINION

RINER, Chief Justice.

The Big Horn Coal Company, a corporation, plaintiff and respondent here, by its petition brought an action in the District Court of Sheridan County to obtain by eminent domain proceedings a right of way over certain lands owned by the Sheridan Coal Company, also a corporation. The right of way was sought by said Big Horn Coal Company to secure the means, through the

construction of a railroad, of moving coal from certain described real property leased by said company from the owners thereof to the main line of the Chicago, Burlington and Quincy Railroad Company. This action was brought pursuant to the provisions of Article 63 (Section 3-6301—3-6316 inclusive) of W. C. S. 1945 and the Sheridan-Wyoming Coal Company aforesaid was consequently named in said action as defendant. Hereafter for brevity and convenience, the plaintiff below will be so designated or as the Big Horn Company and the defendant below will be so mentioned or as the Sheridan Company.

Thereafter the defendant filed its answer to plaintiff's petition in general denying plaintiff right to condemn the right of way sought and asserting that there was no immediate necessity for the appropriation by the Big Horn Company of the lands desired by the latter.

It appears by the record that there were two rather extended hearings had at which evidence was introduced before the court concerning the issues presented by the pleadings above mentioned, one commencing May 24, 1949 and concluding May 25, 1949; the other commencing and concluding on August 1, 1949. The evidence taken in the earlier hearing was by stipulation submitted for consideration by the court in the second hearing so far as it was deemed material.

It is stated in the brief of the Big Horn Company herein filed that during the course of the presentation of the matter in May 1949 the trial judge accompanied by counsel and representatives of both parties inspected the premises sought to be condemned, the lands leased by the Big Horn Company where it was proposed to do strip mining, the route suggested in the original petition of the plaintiff, the alternate routes proposed by the Sheridan Company and the lands in the vicinity.

This statement does not seem to be controverted. Subsequent to the May hearing an effort was made by the parties to reach an agreement as to the right of way which should be accorded plaintiff. Apparently this was done at the suggestion of the court and would seem to account for the fact that the hearing on the matter was split, and two had instead of one complete hearing. This effort failed and the August hearing was then had. Upon its termination the court entered an order designated a "judgment" which in general terms found substantially as follows:

That plaintiff is a Wyoming corporation engaged in the business of mining coal and defendant is the owner and in possession of the property sought to be condemned and hereinafter described; that it is the plaintiff's purpose to construct along the routes and between the places hereinafter mentioned, a standard gauge railroad from a point where said route intersects the Chicago, Burlington and Quincy Railroad which point is specifically described, thence in a general northeasterly direction across the Tongue River to the coal lands of the plaintiff; that plaintiff has caused to be surveyed, staked and located, its railroad line as set forth in plaintiff's petition, said right of way being there specifically and particularly described; that an immediate necessity exists for the appropriation by the plaintiff of that part of defendant's lands hereinabove described to enable plaintiff to construct, maintain, and operate its said railroad for coal transportation; that plaintiff has heretofore sought in good faith to purchase defendant's interests in said lands and settle for the damages resulting from the taking of the same but without result and consequently served the defendant with notice of its intention to file its petition for condemnation as by law required; that the land sought to be taken is located so as to be most compatible with the aforesaid necessity of plaintiff and which will be least injurious.

The court further found that the right of way as described in plaintiff's petition and sought to be taken includes certain of defendant's lands desired for trackage and tipple extending beyond where plaintiff has access to its own lands and as to this attempted appropriation, the court found against the plaintiff and in favor of the defendant and plaintiff's petition in that respect is denied; that plaintiff has applied as provided by Section 3-6311 and Section 3-6312 W. C. S. 1945 for fixing a bond to enable plaintiff to enter upon and appropriate the above described real property of the defendant and that a bond in the sum of $1000 should be fixed conditioned upon payment of such condemnation money, compensation, and costs as shall be finally determined.

The court accordingly ordered and decreed that said proceedings were duly and regularly brought and that there exists an immediate necessity for the appropriation of the above described real estate; that defendant forthwith file in the district court for approval its bond in the sum of $1000 for the payment of all condemnation money compensation and costs and upon such a filing and approval of said bond, plaintiff is authorized to enter upon said premises, take and appropriate the possession of same and proceed with the construction of its railroad thereon.

That it was further ordered by the court that three impartial freeholders of said county, naming them, be appointed as commissioners to determine the compensation to be paid defendant for the taking of said property without regard to the minerals underlying same, condemnor having waived same; that August 25, 1949 was appointed by the court as the date for the first meeting of the commissioners who should make and certify their ascertainment and assessment on or before August 31, 1949. To this order of the court the defendant and plaintiff each excepted and these excep-

tions were allowed by the court. This order was entered on the court's journal August 15, 1949.

One of the commissioners thus selected resigned and on August 22 following, another one was appointed by the court to serve in his stead.

August 23, 1949 the defendant filed its notice of appeal to this court from the "judgment" of the court entered August 15, 1949; this notice was acknowledged as served on plaintiff by its counsel the day it was filed. August 25, 1949 the plaintiff also filed its notice of appeal from said "judgment" and service thereof was acknowledged by the defendant the same day.

August 30, 1949 the commissioners or appraisers aforesaid took their oath of office which was filed with the clerk of the district court September 1, 1949. The same day, to-wit: August 30, 1949 the commissioners made their appraisment of the appropriated property assessing the value and damages involved in the "total sum of $655.79". This certificate of assessment was filed September 1, 1949. On the date last mentioned the plaintiff deposited with the clerk of the district court of Sheridan County its check for the amount of this assessment and award as given above.

September 8, 1949 the defendant filed in said clerk's office its exceptions to the commissioners' award as described above and also its demand, supported by affidavit of counsel for defendant, that the matter of damages to be paid by plaintiff for the taking and injuring of defendant's lands "be submitted to a jury in this court according to law." By repeated extensions applied for by the defendant, time for filing the record on appeal in the district court was extended to December 25, 1949. This record was finally filed in that court December 19, 1949 and thereafter in this court January 19, 1950.

No motion was filed by the plaintiff to dismiss this appeal and no jury trial has as yet been had as provided by Section 3-6308 W. C. S. 1945, counsel for both parties having, nevertheless, filed briefs on questions arising upon the record brought here as above set forth. The cause was submitted for decision by this court without oral argument and accordingly taken under advisement.

It is apparent, from what has been set forth above, that no final disposition of this matter has as yet been made by the district court. That will come later when the verdict of the jury is taken and its conclusion as to the award to be made is confirmed by order of the district court of Sheridan County.

Under the situation thus presented this appeal should be dismissed and the cause remanded for further proceedings in accordance with law.

That this result should be reached is supported by the following authorities:

In 2 Lewis on Eminent Domain (3d Ed.) 1423, Section 803 it is stated that:

"The order appointing commissioners is not a final one, and not appealable unless by express provision of the statute."

Numerous decisions to that effect are cited in the textual note.

30 C. J. S. 28, 29, Section 348 says that:

"Unless it comes within some special statutory provision, an adjudication as to the right to condemn or appointing commissioners to assess damages, which is regarded as interlocutory in nature, is generally not appealable, at least until after final judgment, or until after ascertainment of the compensation and payment thereof".

In 2 Am. Jur. 918, Section 117 the general rule is indicated in these words:

"In most jurisdictions it is held that an order appointing commissioners to assess damages is an interlocutory order from which an appeal will not lie, nor is an order vacating or refusing to vacate an order appointing commissioners ordinarily appealable."

The point we are considering is discussed in 2 Nichols on Eminent Domain, 2d Ed. 1093 and 1094, Section 415 and this language is used:

"The rule at common law is that a writ of error does not lie except to a judgment which determines the entire controversy between the parties, and the courts have generally in accordance with this principle discouraged the review of a cause piecemeal. For this reason it is held in some jurisdictions that an order adjudging that the petitioner has the right to condemn is interlocutory only and not subject to appeal, and so the points of law involved in the adjudication cannot be heard by an appellate court until there has been a final judgment of condemnation. The right of the owner to be heard by an appellate court upon the points of law involved in the adjudication of the right to take is of course not lost, but merely deferred until there is a decision of the trial court on the merits, confirming the award of compensation. Such a decision is a final judgment and may be reviewed as such, both upon the validity of the taking and upon the questions of law arising at the trial in which the amount of compensation was determined."

A number of leading authorities are cited in support of the foregoing textual statement.

The Supreme Court of Colorado in Miller vs. City and County of Denver, 84 Colo. 397, 270 Pac. 866 dismissed a writ of error which undertook to procure a review of a District Court order determining that a condemnation proceeding was proper and where an order had been made appointing commissioners said this:

"Whatever may be the holding in other jurisdictions, in this state an order of the trial court determining that the condemnation proceeding will lie and appointing commissioners is not a final, but an interlocutory, order, to which a writ of error will not lie. After the final determination of the proceeding and the entry of a final decree, a writ of error will present for review all the objections now urged. Burlington & Colorado R. R. Co. v. Colorado Eastern R. R. Co., 45 Colo. 222, 100 P. 607, 16 Ann. Cas. 1002. Counsel cite, as sustaining the contrary position, Denver Power & I. Co. v. Rio Grande R. R. Co., 30 Colo. 204, 69 P. 568, 60 L. R. A. 383. But there the judgment denied the petitioner's right to condemn, which, of course, finally disposed of the proceeding."

See also First National Bank of Greeley, 109 Colo. 6, 121 Pac. 2d 488.

In State vs. Wood, 219 Ind., 424, 39 N. E. 2d 448 this language was used by the appellate court in dismissing an appeal from an order appointing appraisers in condemnation proceedings:

"The parties agree that the appeal is from an interlocutory order appointing appraisers and governed by § 3-1705, Burns' 1933, § 14065, Baldwin's 1934. Both sections are a part of the Eminent Domain Act of 1905. As pointed out in Hallett v. Calvert, 1934, 207 Ind. 25, 191 N. E. 77, there are two separate provisions for appeal in the latter section.

"The first provision pertains to appeals taken by a plaintiff who is seeking to condemn real estate and whose right so to do is challenged by objections of defendants whose lands or interests therein are affected. This provision does not authorize an appeal from an order appointing appraisers. That which is to be reviewed by such appeal is the 'decision' sustaining the objections to the complaint and denying plaintiff's right to take the land. If on appeal the decision is sustained the cause is ended; if it is reversed appraisers are appointed, and the cause proceeds to final judgment from which either party may appeal."

The Supreme Court of Minnesota in Antl vs. State, 220 Minn. 129, 19 N. W. 2d 77 reviewing prior decisions in that jurisdiction remarked that:

"In Duluth Transfer Ry Co. v. Duluth Terminal Ry. Co., 81 Minn. 62, 63, 83 N. W. 497, where it was held that an order appointing commissioners in condemnation proceedings is not appealable and that such order and all other intermediate orders made in the proceedings may be reviewed on appeal from the final judgment to be rendered therein, the court said: 'The order appointing commissioners is not a final order, any more than an order denying a motion to vacate the former. If, as suggested by counsel for appellants, no final judgment is contemplated or authorized by the statutes in proceedings of this kind, clearly the order appointing commissioners would be final, and certainly appealable. But, as in the Fletcher case (Fletcher v. Chicago, St. P., M. & O. Ry Co., 67 Minn. 339, 69 N. W. 1085), we hold that the statutes authorize and provide for a final judgment; and the order appointing commissioners, and all questions incident thereto, including the right of the receiver to institute and prosecute the proceedings, and the questions as to the propriety and necessity of the proposed improvement, may be reviewed on an appeal therefrom. *All intermediate orders made in such proceedings may be reviewed on the appeal from the final judgment.*' (Italics supplied.)

"The order in the above case not only appointed commissioners, but also determined that, to serve the public interests, it was necessary for petitioners to take, appropriate, and use the strip of land involved. It ordered petitioners to pay or secure to the landowners all damages and compensation to which they would be entitled. The appeal was from the whole order.

"In State, by Burnquist, v. Fuchs, 212 Minn. 452, 453, 4 N. W. 2d 361, 362, in a proceeding for the condemnation of land for highway purposes, this court, following the Duluth Transfer Ry Co. case, said: 'In any event, the proceedings contemplate a final judgment under (Mason St. 1927) § 6553 or § 6557-1 (d). The law is well settled that an order appointing commissioners in

eminent domain proceedings is not a final one and is not appealable.' "

In Ornstein vs. Chesapeake & O. Ry Co., 123 Ohio State 260, 174 N. E. 772 the Supreme Court of Ohio quoted from an earlier decision in the same jurisdiction (72 Ohio State 167, 74 N. E. 172, 175) thus:

" 'The determination of the preliminary questions by the probate judge is not a final judgment, any more than is an order sustaining or overruling a demurrer. Of course, if the probate judge should determine these questions against the expropriator, and then enter a judgment dismissing the petiion, that would be a final judgment, from the rendition of which either party might within 30 days file a petition in error.' "

The court went on to say that:

"Counsel for Ornstein urge that a rule which gives to the expropriator the right to prosecute error from a denial of his right to appropriate the property, but denies the right of the property owner to immediately prosecute error from an order granting the right to appropriate, is a denial of the equal protection of the laws. This does not by any means follow. A denial of the right to appropriate, and a judgment of dismissal of the petition on that ground, becomes a final order, because it is the end of the case. If the right is granted, it becomes only a preliminary order in a case still pending and awaiting final determination.

"All of these statutes have been in effect since April 23, 1872, without substantial change. The changes which have been made since the decision of Pittsburgh, C. & T. R. Co. v. Tod, supra, do not detract from the soundness of the decision of that case. Ornstein has had a full hearing upon the preliminary questions and presumably will receive a full hearing upon the determination of the value of the property, and if not satisfied with the amount of the verdict may prosecute error therefrom, and, as a part of the same error proceeding, may have a review of the determination of the preliminary questions."

This case was taken on appeal to the United States Supreme Court but was thereafter dismissed for want of jurisdiction, citing Grays Harbor Logging Co. vs. Coates-Fordney Logging Co. 243 U. S. 251, 255-7, 37 S. Ct. 295, 61 L. Ed. 702, an eminent domain case where the court dismissed a writ of error proceeding seeking the review of a state court ruling that plaintiff had a right to exercise the power of eminent domain, the Federal Supreme Court saying:

"The judgment brought up by the present writ of error not being a final judgment, within the meaning of § 237, Judicial Code, the writ must be dismissed."

See also 284 U. S. 572, 52 S. Ct. 14, 76 L. Ed. 497.

The persuasive force of the Ohio decision last above cited is apparent when we recall that Section 3-6308 W. C. S. 1945 provides in part:

"The said trial by jury shall be conducted in the same manner as trials by jury in civil actions, and, except as otherwise provided in this chapter (§§ 3-6301—3-6310, 3-6314—3-6316), the provisions of the code of civil procedure relating to new trials, bills of exceptions and proceedings in error, shall constitute the rules of practice in all proceedings under this act, so far as the same may be applicable."

Our code of civil procedure, as the profession in Wyoming generally knows is largely borrowed from that of the State of Ohio. See also Wrightsman vs. Southern Natural Gas Co. 173 Okla. 75, 46 Pac. 2d 925.

Finally, in Catlin vs. United States, 324 U. S. 229, 65 S. Ct. 631, 89 L. Ed. 911, a proceeding involving the exercise of the power of eminent domain, the question for review was whether orders entered in the course of the proceeding were appealable "as final decisions" within the meaning of Judicial Code, Section 128 as amended 28 U. S. C., Section 225 (a), 28 U. S. C. A., Section 225 (a). The land owners filed a motion to va-

cate the "judgment" and dismiss the petition which the court denied and the land owners appealed. The National Supreme Court examined the point thus:

"The Circuit Court of Appeals held the orders not final decisions within Section 128 and dismissed the appeal. 7 Cir., 142 F. 2d 781. We granted certiorari, 323 U. S. 696, 65 S. Ct. 92, in order to resolve conflict upon this question among several Circuit Courts of Appeals.

"We think the judgment was right. Petitioners' motions raised issues grounded in contentions that the taking was not for a purpose authorized by the War Purposes Act.

"Accordingly they urged that neither petition stated a cause of action, the court acquired no jurisdiction of the cause or to enter the order relating to title, and it was error to deny the motion to vacate and to dismiss. Since the issue here is whether the orders are final, for purposes of appeal, we assume, though we do not decide, that the substantive issues have sufficient merit to warrant determination upon review. Even so, we think petitioners have mistaken their remedy. Their right to appeal rests upon Section 128 of the Judicial Code. This limits review to 'final decisions' in the District Court. A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. St. Louis I. M. & S. R. R. v. Southern Express Co., 108 U. S. 24, 28, 2 S. Ct. 6, 8, 27 L. Ed. 638. Hence, ordinarily in condemnation proceedings appellate review may be had only upon an order or judgment disposing of the whole case, and adjudicating all rights, including ownership and just compensation, as well as the right to take the property. This has been the repeated holding of decisions here. The rule applies to review by this Court of judgments of state courts, in advance of determination of just compensation, although by local statute 'judgments of condemnation,' i.e., of the right to condemn particular property, are reviewable before compensation is found and awarded. Wick v. Superior Court, 278 U. S. 574, 49 S. Ct. 94, 73 L. Ed. 515; Id., 278 U. S. 575, 49 S. Ct. 94, 73 L. Ed. 515; Public Service Co. of Indiana v. City of Lebanon, 305 U. S. 558, 59 S. Ct. 84, 83 L. Ed. 352;

Id., 305 U. S. 671, 59 S. Ct. 143, 83 L. Ed. 435; cf. Dieckmann v. United States, 7 Cir., 88 F. 2d 902. The foundation of this policy is not in merely technical conceptions of 'finality'. It is one against piecemeal litigation. 'The case is not to be sent up in fragments * * *'. Luxton v. North River Bridge Co., 147 U. S. 337, 341, 13 S. Ct. 356, 358, 37 L. Ed. 194. Reasons other than conservation of judicial energy sustain the limitation. One is elimination of delays caused by interlocutory appeals."

The consequences of attempting to appeal from a non-appealable order are succinctly stated in 4 C. J. S. 1979, Section 1368 as follows:

"it is well settled that an appellate court is warranted in, or, under the language of some cases, *is put under the duty of, dismissing an appeal or writ of error of its own motion for* want of jurisdiction, as where the court does not have jurisdiction of the amount involved, *where the order or cause is not appealable."* (Italics supplied).

Numerous decisions are cited in Note 1 supporting the text.

All the questions urged and argued in counsels' briefs in this cause as it appears before us, are subject to review upon an appeal taken from the award of the jury herein and an order made confirming it. That order is undoubtedly appealable under the authorities mentioned above and this is the orderly manner in which such interlocutory rulings are reviewed in an appellate court unless a special statute otherwise provides.

This appeal should be dismissed as already indicated and the cause remanded for such further proceedings herein as the law provides and not inconsistent with the views hereinabove expressed.

Appeal Dismissed and Cause Remanded.

KIMBALL, J. and BLUME, J. concur.