## UNITED STATES v. RICHARDSON.
### No. 14293.

United States Court of Appeals
Fifth Circuit.
May 6, 1953.

Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., Frank B. Potter, U. S. Atty., Ft. Worth, Tex., Curtis P. Harris, Sp. Atty., Dept. of Justice, Oklahoma City, Okl., James M. McInerney, Asst. Atty. Gen., for appellant.

Gillis A. Johnson, R. K. Hanger, Warren Scarborough, Carlisle Cravens and Peveril O. Settle, Jr., Fort Worth, Tex., for appellee S. W. Richardson.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

This is a condemnation proceeding instituted by the Government July 28, 1950. The petition was filed under the River and Harbor Act of March 2, 1945, 59 Stat. 10, 18, the War Department Civil Appropriation Act, 1948, 61 Stat. 686, the Civil Functions Appropriation Act, 1949, 62 Stat. 1019, and the Civil Functions Appropriation Act, 1950, 63 Stat. 845. It was alleged that the Secretary of the Army, in conformity with the authority vested in him, had determined that the lands to be acquired in Tarrant County, Texas were needed for use in connection with the construction and operation of the Benbrook Dam on the Clear Fork of the Trinity River and that the necessary funds had been appropriated. On July 29, 1950, an order for immediate possession was entered ex parte. Included in the lands described in the petition and the order was Tract B–108, owned by appellee, S. W. Richardson, which is the subject matter of the present controversy.

On November 14, 1950, the Government filed an amended petition for the purpose of amending the description of Tract B–

108.[1] Thereafter, on November 17, 1950, pursuant to the Declaration of Taking Act of February 26, 1931, the Secretary of War filed a declaration [2] and deposited in court $162,000 as the estimated compensation for Tract B–108. The court thereafter entered judgment, likewise ex parte, decreeing that title had vested in the United States upon the filing of the declaration and making of the deposit, also declaring the right of just compensation vested in the persons entitled thereto; that possession of the land be immediately delivered; and that the cause be held open "for such other and further orders, judgments and decrees as may be necessary in the premises."

Thereafter, on August 21, 1951, appellee filed his answer denying many of the allegations of the petition as amended and setting up numerous objections and defenses to the taking of his property.[3] After the answer was filed, as before, counsel for appellee attempted to have petitioner's attorneys agree on a time and place when it would be most convenient to take the oral deposition of the Secretary of the Army.

Appellee offered to bear all of the expenses incurred in attending and taking the deposition and the Secretary and the petitioner and its attorneys were offered every reasonable opportunity to select the time and place where the deposition could be taken with the least inconvenience possible. But the agreement sought was not achieved and there followed the action which is the immediate cause of the present controversy.

On December 31, 1951, appellee filed and served a notice to take the oral deposition of Frank Pace, Jr., Secretary of the Army, at Fort Worth, Texas, on January 15, 1952. The Secretary did not attend and by reason thereof appellee filed a motion on January 28, 1952, under Rule 37(d), F.R.C.P., 28 U.S.C. setting up that the Secretary had willfully failed to appear for the taking of his deposition, had filed no motion under Rule 30, F.R.C.P., or any other applicable rule or statute complaining of the time and place fixed in the notice or seeking any relief in regard thereto; and that the court should dismiss the cause, or in the alternative enter an order requiring the Secretary

1. The original petition sought to condemn 1452 acres in fee and by the amendment this figure was reduced to 1207 acres.

2. The declaration recites that "The land hereinafter described is taken under and in accordance with the Act of Congress approved February 26, 1931 (46 Stat. 1421; 40 U.S.C.A. § 258a), and Acts supplementary thereto and amendatory thereof; and under the further authority of the Act approved April 24, 1888, (25 Stat. 94; 33 U.S.C.A. § 591), and the Act approved March 1, 1917 (39 Stat. 950; 33 U.S.C.A. § 701), which acts authorize the acquisition of land for River and Harbor and Flood Control projects; and under the further authority of the Act of Congress approved March 2, 1945 (Public Law No. 14—79th Congress, 59 Stat. 18), which act authorized the project for the construction and operation of the Benbrook Dam and Reservoir on Clear Fork of the Trinity River, Texas; and the War Department Civil Appropriation Act, 1948, approved July 31, 1947 (Public Law No. 296—80th Congress [61 Stat. 686]), the Civil Functions Appropriation Act, 1949, approved June 25, 1948 (Public Law No. 782—80th Congress [62 Stat. 1019]), and the Civil Functions Appropriation Act, 1950, approved Octo-

ber 13, 1949 (Public Law No. 355—81st Congress [63 Stat. 845]), which acts appropriated funds for such purposes."

3. Appellee attacked the petition as amended on the grounds, among others, (1) that the project authority was limited and that appellee's lands were sought to be condemned under a "substantial departure and variance from the public work authorized by Congress"; (2) that petitioner is seeking to condemn the whole or greater part of more than 1200 acres solely for unauthorized purposes; (3) that the attempt to condemn Tract B–108 "is unauthorized by law and is in fact the result of arbitrary and capricious conduct, unreasoned and without adequate determining principle on the part of the Secretary of the Army and/or his agents and subordinates, and amounts to bad faith in the construction of such project and attempted acquisition of lands in the so-called reservoir area against the landowners and particularly has been and is under all the facts and circumstances unreasoned and directed arbitrarily, capriciously and without good faith and with malice against this defendant and his property * * * under all the facts and circumstances of this proceeding."

to appear and give his deposition at such time and place as may be fixed by the court, and that upon failure to respond in obedience to said order, this cause be dismissed. A hearing on the motion was had on February 11, 1952. At this hearing appellant's attorneys insisted that the oral deposition should be taken in Washington, D. C. In response to an inquiry by the court as to the proper method of procedure, Government counsel stated that if appellee desired to take the Secretary's deposition, "this court could enter an order that he can take it in Washington, D. C., or he could simply notify the Attorney General the time and place that he was going to take it in Washington, D. C., and issue a subpoena notifying, just notifying the Attorney General, as attorney of record, and Frank Pace, Jr., will be there, unless he is over in some other country, or something like that." After the hearing the court entered its order of February 28, 1952, in which it found that no evidence had been offered by petitioner to show that the failure of the Secretary to appear at the time and place specified in the notice was not willful. The order directed the Secretary to give his oral deposition in Washington, D. C., but it did not command his appearance at a fixed time and place and the attorneys for petitioner were directed to obtain the Secretary's designation of a suitable place in Washington, D. C. for the taking of such deposition and a designated time which should be within thirty days from the date of the entry of the order. The order further provided "that because the Honorable Frank Pace, Jr., Secretary of the Army of the United States is an officer and managing agent of petitioner herein, it shall not be necessary for subpoena to be issued and served herein requiring his attendance * * * but this order shall be deemed sufficient to require his attendance at the time and place as directed herein." It concludes with the recitation that final ruling on the motion to dismiss will be held in abeyance "subject to the full compliance with the provisions of this order." The order of February 28th, was submitted to the Secretary who in turn advised Government counsel that he was unable at that time to fix a date on which he could submit to the oral deposition.

Thereafter the appellant filed a pleading which it chose to call a "response." On March 17, 1952, an amended response and objection to the taking of the deposition was filed. These instruments objecting to the taking of the deposition of the Secretary set forth the following, among other matters: that the Secretary advises that he is too busy with other duties of national and international importance; that he was not required by law to give his deposition; that his deposition was not necessary; that he is not an officer and managing agent of the United States; that there are no specified facts alleged or issues raised that he personally did act in an arbitrary and capricious manner in the execution of the declaration of taking or in causing the filing thereof; and that the exercise of his discretion was not the subject of judicial investigation or review. These pleadings were not verified by oath and no affidavits were filed in support of the factual statements therein made. The relief therein prayed was that the court require appellee to state specifically what he would expect to prove by the taking of the oral deposition of the Secretary, and that the court after a proper hearing enter its order and judgment with reference to the proceedings in this respect and to excuse the Secretary from appearing for oral deposition. The appellee by way of answer filed a sworn reply on April 3, 1953, objecting to this pleading as amended on the ground among others that it was not seasonably filed as required by Rule 30 F.R.C.P.; denying each and every material fact therein alleged and renewing his motion of January 28, for appropriate orders under Rule 37 F.R.C.P. A hearing was had on the same day that appellee filed his reply. At the hearing appellant's counsel admitted that the order of February 28, 1952, had been entered by the court at his suggestion. However, it was argued that no real necessity existed for taking the deposition of the Secretary and that petitioner was willing to make admissions of a character which would eliminate the necessity of interrogation if afforded an

opportunity to do so. This avowed willingness to make admissions was made with full knowledge of the facts for at this hearing and at appellant's request the court had required appellee's attorneys to state what they expected to prove and compliance was conceded. In the light of the foregoing and in another attempt to comply with the suggestions of petitioner's attorneys the court again postponed action on appellee's motion and entered the order of May 3, 1952. Attached to and made a part of this order were seventeen requested admissions and petitioner was allowed ten days for answer, failing which appropriate action would be taken under Rule 37 F.R.C.P. for noncompliance with the court's order of February 28, 1952.

Upon motion of the petitioner and on the strength of the averment that the duties of the Secretary had prevented him from giving the time necessary to answer the requested admissions the time for answer was extended to May 20, 1952. After obtaining the delay petitioner declined to answer a single request or make any admission called for. Its next move was to file objections to the request for admissions. Then on May 20, 1952, the day following, a statement was filed setting forth the reasons why petitioner could not admit or deny the admissions which appellee had requested. This statement concluded with a prayer that the court adjudicate that the answer filed by the condemnee was insufficient to state a defense or raise matters subject to judicial determination; overrule the motion to dismiss and all other motions or pleadings based upon the answer or related thereto and finally adjudicate the validity of this proceeding.

The court having fully heard the parties on two prior occasions and being advised that no further hearing was desired there followed the order of June 30, 1952, entitled, "Order Abating Prosecution As to Tract B–108." The order overrules petitioner's objections to the request for admissions, holds that the reason for not admitting or denying the requests are insufficient and overrules the motion of petitioner. It then recites that appellee's motion to dismiss and for sanctions and relief filed on January 28,

1952, and renewed on April 3, 1952, is in part granted and in part refused in that "(1) It is ordered that this cause be not now dismissed, but that such cause and any prosecution of it by petitioner * * * as against S. W. Richardson and Tract B–108 * * * is hereby abated;" (2) that any and all orders for possession of Tract B–108 heretofore entered are set aside, and any possession, right of control, dominion or use under such orders for possession now asserted or hereinafter attempted to be asserted by petitioner are hereby declared to be without authority, and all judicial writs of possession, process, and remedies for relief invoked by petitioner against S. W. Richardson, and Tract B–108 are hereby withdrawn and suspended.

This appeal is from the order of June 30, 1952. An application for leave to file a petition for writ of mandamus or prohibition has also been made.

The first question presented for decision is whether the order in question is appealable either as a final decision under 28 U.S.C. § 1291 or as an interlocutory injunction under § 1292.

The order of June 30, 1952, directs that this cause be not dismissed but that the cause and any prosecution of it by petitioner against Richardson and his lands should be abated. The order did not purport to interfere with the statutory consequences of compliance with the Declaration of Taking Act. It simply withdrew and suspended the judicial assistance which petitioner had invoked ex parte against appellee. Its purpose was to stay the proceeding until appellant complies with the discovery process, as it had expressly agreed to do on February 11, 1952, when it invited the court to enter the order of February 28, 1952. Indeed the government in written argument concedes that "the statement that the cause be not now dismissed would indicate that abate was used in the equity sense and hence that a final order had not been entered." It is clear, we think, that the order appealed from is not a final decision within the meaning of Section 1291, 28 U.S.C. It is well settled that a condemnation proceeding is not reviewable until after final judgment

disposing of the whole case and adjudicating all rights, including ownership and just compensation as well as the right to take property. "The foundation of this policy is not in merely technical conceptions of 'finality.' It is one against piecemeal litigation. 'The case is not to be sent up in fragments * * *.'" Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 634, 89 L.Ed. 911; Luxton v. North River Bridge Co., 147 U.S. 337, 341, 13 S.Ct. 356, 37 L.Ed. 194; Southern R. Co. v. Postal Telegraph Co., 179 U.S. 641, 643, 21 S.Ct. 249, 45 L.Ed. 355; Grays Harbor Logging Co. v. Coats-Fordney Logging Co., 243 U.S. 251, 256, 37 S.Ct. 295, 61 L.Ed. 702; State of Washington ex rel. McPherson Bros. Co. v. Superior Court, 274 U.S. 726, 47 S.Ct. 769, 71 L.Ed. 1335; Ornstein v. Chesapeake & Ohio Ry. Co., 284 U.S. 572, 52 S.Ct. 14, 76 L.Ed. 497; cf. Collins v. Miller, 252 U.S. 364, 370, 40 S.Ct. 347, 64 L.Ed. 616; United States v. Florian, 312 U.S. 656, 61 S.Ct. 713, 85 L.Ed. 1105.

■ Nor is the interlocutory order of June 30, 1952, appealable as an injunction under 28 U.S.C. § 1292. The court in the exercise of its inherent powers and in an effort to insure that appellee be not denied due process merely granted a stay of proceedings the overall effect of which was to condition appellant's right to proceed on compliance with the discovery process. The stay order entered in this case is not an injunction within the meaning of Section 1292. In Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 311, 79 L.Ed. 440, the Supreme Court in its consideration of the legislative purpose of 28 U.S.C. § 1292, said:

> "This section contemplates interlocutory orders or decrees which constitute an exercise of equitable jurisdiction in granting or refusing an injunction, as distinguished from a mere stay of proceedings which a court of law, as well as a court of equity, may grant in a cause pending before it by virtue of its inherent power to control the progress of the cause so as to maintain the orderly processes of justice."

It follows from the foregoing that the appeal should be dismissed.

■ This brings us to a consideration of the second question which this case presents—the propriety of using a writ of mandamus or prohibition to compel the district judge to set aside an order which was the culmination of several previous interlocutory orders. We are in no doubt that we have jurisdiction to issue an alternative writ in a proper case but these writs as was said in Ex parte Fahey, 332 U.S. 258, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041 "should be resorted to only where appeal is a clearly inadequate remedy. * * * As extraordinary remedies, they are reserved for really extraordinary causes." The present case may not be so characterized. The appellant contends that if a writ is not granted it is left without a remedy and that the power of review will be defeated. Further that the order for examination constituted not only an abuse of discretion but an error as to the scope of the court's authority under the rules. These contentions are clearly without merit because the alleged unfortunate predicament of appellant is of its own making and the effect of the stay order requiring compliance with the discovery process can be subsequently determined on appeal in the final judgment dispositive of the whole cause. We purposely refrain from expressing our opinion on the merits of the orders of the district court and are content to say that if the judge did commit error it was invited error. This record affirmatively shows that the petitioner induced the court below to make each of the successive orders which culminated in the order of June 30, 1952, on the representation that by pursuing the suggested course appellee would be entitled to receive the information he was seeking, and it follows that the petitioner may not now challenge the trial court's authority. Cf. Laycock v. Hidalgo Water District, 5 Cir., 142 F.2d 789, 155 A.L.R. 460.

For the foregoing reasons the appeal is dismissed and the application for leave to file a petition for the writ of mandamus or prohibition is denied.